**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jayce Bryant, | No. CV-19-01552-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Tristate Logistics of Arizona LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Strike Samantha Sanders' Consent to Join Collective Action and to Compel Arbitration,[1] (Doc. 29, "Sanders Mot."). Defendants also filed two virtually identical motions concerning Randy Hagelback's Consent to Join Collective Action, (Doc. 53, "Hagelback Mot."), and Chris and Donald Kooiman's Consents to Join Collective Action, (Doc. 60, "Kooiman Mot."). Plaintiff Jayce Bryant responded to each Motion, (Doc. 35, "Resp."; Docs. 55, 61), however, his latter two responses merely "rely on [his] arguments that were brought in the [first response]," but as applied to the other two individuals. (Doc. 55 at 2; Doc. 61 at 2.) Defendants replied to the Sanders and Kooiman Motions. (Doc. 36, "Sanders Reply"; Doc. 62, "Kooiman Reply"). The Court has considered the pleadings, their associated exhibits, and relevant case law and now issues the following Order.[2]

---

[1] This motion and the related motions, as they relate to compelling arbitration, are appropriately brought under Federal Rule of Civil Procedure 12(b)(1). *See ROI Props. Inc. v. Burford Capital Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019).

[2] Defendants requested oral argument on each motion, but the Court finds that the issues are adequately presented in the briefs and can be resolved without hearing. LRCiv 7.2(f).

# BACKGROUND

Between March and July 2016, Plaintiff was employed by Defendants as a "courier/warehouse worker." (Doc. 1, "Compl." ¶¶ 14, 61, 69.) In that role, "[he] was paid approximately $96 per day, regardless of the number of hours," "to perform automobile parts delivery-related duties, which generally consisted of . . . transporting and delivering automobile parts." (*Id.* ¶¶ 15-16, 61.) In Plaintiff's estimation, he "worked approximately between forty-eight (48) and sixty (60) hours per week," (*id.* ¶ 73), but "was never paid any overtime premium whatsoever for time spent working in excess of 40 hours per week," (*id.* ¶ 78), and instead "paid on a daily, flat rate basis," (*id.* ¶ 79).

Based on these allegations, Plaintiff brought this case on behalf of himself and a class of others similarly situated against Tristate Logistics of Arizona, LLC, Tristate Logistics, LLC, Carlos and Jane Doe Jorge, Tristate Logistics of Nevada, LLC, C&A Holdings, LLC, and The Bon Air Trust. (*Id.*) On behalf of Plaintiff and the class, the Complaint alleges Defendants violated the Fair Labor Standards Act ("FLSA") by not paying overtime wages. (*Id.*)

On the same day Defendants Tristate Logistics of Arizona, LLC, Tristate Logistics, LLC, and Carlos Jorge answered the Complaint, (Doc. 17), Tristate Logistics of Nevada, LLC, C&A Holdings, LLC, and The Bon Air Trust moved to dismiss under Rule 12(b)(6) as it relates to them. (Doc. 18 at 1.) They argued the Complaint lacked allegations that they were Plaintiff's "employers" under the FLSA, either as individual or joint employers, (*id.*), to which the Court agreed with, (*see* Doc. 66). The Complaint, as it relates to those parties, was dismissed with leave to amend. (*Id.*)

Before these parties were dismissed, Plaintiff filed Notices of Filing Consent to Join FLSA Collective Action ("Notices") on behalf of Ms. Sanders, Mr. Hagelback, Mr. D. Kooiman, and Mr. C. Kooiman.[3] (Docs. 26, 46, 59.) After the first Notice, but before the other two, Plaintiff moved to conditionally certify this case as a collective action under section 216(b) of the FLSA. (Doc. 30.) However, as of this Order, the Court has not

---

[3] The Consent to Join forms are exhibits to the Notices. (Doc. 26-1; Doc. 46-1; and Doc. 59-1.)

conditionally certified the case.

At any rate, Defendants move to strike Plaintiff's Notices and for an order compelling Sanders, Hagelback, and the Kooimans to arbitrate their FLSA claims. ("Sanders Mot."; "Hagelback Mot."; "Kooiman Mot."). In support, Defendants provide signed, identical "Agreements to Arbitrate" by each individual.[4] (Doc. 29-1, "Sanders Agreement"; Doc. 67-1, "Hagelback Agreement"; Doc. 60-1, "Kooiman Agreements"). The Agreements provide in relevant part:

> 1. Except as qualified below, any dispute or claim between [Sanders, Hagelback, or the Kooimans] and [Tristate Logistics of Arizona, LLC] . . . arising under, out of, or in connection with this Agreement to Arbitrate ("Arbitration Agreement"), or otherwise relating to or arising out of the relationship between [Tristate Logistics of Arizona, LLC] and [Sanders, Hagelback, or the Kooimans] or the relationship between [Sanders, Hagelback, or the Kooimans] and any Customers of [Tristate Logistics of Arizona, LLC] . . . , shall be decided exclusively by binding arbitration under the authority of the Federal Arbitration Act ("FAA"). In the event that the FAA is deemed inapplicable, this Arbitration Agreement shall be enforceable under any applicable state law authorizing enforcement of arbitration agreements. [Sanders, Hagelback, or the Kooimans] AGREES AND ACKNOWLEDGES THAT THIS ARBITRATION AGREEMENT IS IN LIEU OF BOTH [Sanders, Hagelback, or the Kooimans] AND [Tristate Logistics of Arizona, LLC's] RIGHTS TO A COURT OR JURY TRIAL, WHICH ARE WAIVED.

> 2. Disputes within the scope of this Arbitration Agreement shall include, but not be limited to, any claims related to the making of or interpretation of this Arbitration Agreement, any claims for breach of the Agreement, any claims for wages, benefits or other compensation, any torts or common law claims, any claims for alleged violations of the Fair Labor Standards Act, . . . and all other federal, state and local laws or regulations, each as may have been amended, or any other legal theory of liability. To the extent that arbitration of any Dispute arising under federal, state, or local laws or regulations is prohibited by law, all other Disputes shall nonetheless be submitted to binding arbitration.

---

[4] Defendants claim Hagelback signed a similar arbitration agreement and that it is attached to the Hagelback Motion. (*See* Hagelback Mot. at 2.) Although it is not attached there, Defendants luckily provided the agreement later. (*See* Doc. 67-1, "Hagelback Agreement"). At any rate, Plaintiff never raised this omission as a reason for denying the Hagelback Motion.

9. The parties agree that any arbitration pursuant to this Agreement must be resolved on an individual basis and my not be joined as part of a class action, collective action, representative action, or a similar proceeding, nor shall any arbitration pursuant to this Agreement otherwise be consolidated with the claims of any third-party.

(Sanders Agreement at 2-4; Hagelback Agreement at 2-4; Kooiman Agreements at 2-7.)

## LEGAL STANDARD

The above Agreements are governed by the FAA. As the Supreme Court has noted, the FAA reflects a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). With this policy in mind, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Notably, "the FLSA allows agreements for individualized arbitration" including when claims are brought as part of a collective action, *Epic Sys. v. Lewis*, 138 S.Ct 1612, 1626 (2018), and courts must generally "treat [such] arbitration agreements as 'valid, irrevocable, and enforceable,'" *id.* at 1621 (quoting 9 U.S.C. § 2). Because the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed,'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)), "[t]he court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma*, 560 F.3d 935, 940 (9th Cir. 2009); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) ("Our role

is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator.").

## DISCUSSION

### I.    Motion to Compel Arbitration

Defendants claim the Court must compel arbitration for Sanders, Hagelback, and the Kooimans because they entered into valid arbitration agreements covering their disputes. (Sanders Mot. at 7; Hagelback Mot. at 5; Kooiman Mot. at 5.) Plaintiff does not question the existence the Agreements or whether the FAA governs them. Rather, he argues these individuals are exempt under 9 U.S.C. § 1 as "transportation employees engaged in interstate commerce because their primary duty was the transportation and delivery of auto parts that traveled interstate." (Resp. at 3.) In support, he cites to *New Prime v. Oliveira*, 139 S.Ct. 532, 536 (2019), and *Circuit City Stores. Inc. v. Adams*, 532 U.S. 105, 114-15, 119 (2001), for the general proposition that "the FAA excludes contracts of employment for transportation workers engaged in interstate commerce." (Resp. at 3.) Without analogizing to *New Prime* or *Circuit* City or arguing Sanders, Hagelback, or the Kooimans traveled between various states, Plaintiff nevertheless claims they were "engaged in interstate commerce [because] [they] handle[d] *goods* that have traveled interstate." (Resp. at 3 (emphasis added) (citing *Litzendorf v. Prop. Maintenance Solutions LLC*, No. CV-16-00271-PHX-GMS, 2017 WL 5900830, at *3 (D. Ariz. Nov. 30, 2017)). He further argues Defendant Tristate Logistics' name "concedes that they are a transportation company engaged in the business of transporting goods between a minimum of three states." (Resp. at 4.) In reply, Defendants claim these individuals are not interstate transportation workers and therefore not exempt from arbitrating their FLSA claims according to the Agreements they signed. (Sanders Mot. at 2; Hagelback Mot. at 5; Kooiman Mot. at 5.)

### A.    FAA's Interstate Transportation Workers Exemption

The Court begins with the statutory text of Plaintiff's claimed exemption. *See* 9 U.S.C. § 1. The section, "'Maritime transactions' and 'commerce' defined; exceptions to operation of title," provides in relevant part:

> "[C]ommerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but *nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce*.

*Id.* (emphasis added); *see also Circuit City*, 532 U.S. at 112 ("Section 1 exempts from the FAA only contracts of employment of transportation workers."). But this language is not to be as broadly applied as it might seem. The Supreme Court has found that "[t]he plain meaning of the words 'engaged in commerce' is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce.'" *Circuit City*, 532 U.S. at 118. Moreover, in addition to restricting what "engaged in commerce" means, the Supreme Court has also limited the type of employment contracts to which the exemption applies. That is, the phrase "any other class of workers engaged in foreign or interstate commerce" must be read alongside the two preceding groups of exemptions *Id.* As the Supreme Court explained:

> The wording of § 1 calls for the application of the maxim *ejusdem generis,* the statutory canon that [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Under this rule of construction the residual clause should be read to give effect to the terms "seamen" and "railroad employees," and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it; the interpretation of the clause pressed by respondent fails to produce these results.

*Id.* (internal quotation marks and citations omitted).

  With the above narrowing principles in mind, the Court turns to the dispute here:

whether Sanders, Hagelback, and the Kooimans are exempt from the FAA as couriers/warehouse workers who never made deliveries outside Arizona, but handled *goods* that traveled from other states for a *company* that operates in other states. As Defendants point out, *New Prime*, Plaintiff's principal case for this section's applicability, does not answer this question. *See id.*, 139 S.Ct. at 539 ("Happily, everyone before us agrees that Mr. Oliveira qualifies as a 'worker[] engaged in . . . interstate commerce.'"); *see also Scaccia v. Uber Techs., Inc.*, No. 3:18-CV-00418, 2019 WL 2476811, at *5 (S.D. Ohio June 13, 2019) ("*New Prime* did not address the present issue of whether § 1's phrase 'any other class of workers' is limited to workers who, like seamen and railroad workers, actually engaged in the movement of goods in interstate commerce."). As explained below, Plaintiff's arguments fail to establish this exemption applies to Sanders, Hagelback, or the Kooimans.

       1.  <u>Plaintiff Provides No Cases Demonstrating Sanders, Hagelback, or the Kooimans Fall Within the Transportation Workers Exemption.</u>

While Plaintiff's bid for section 1's applicability to intrastate delivery workers who deliver out-of-state products for a regional company is interesting, it is unpersuasive without legal support. *See Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue"); *see also Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016) (noting same, but as applied to section 1's exemption for transportation workers). Plaintiff's cases do not show the exemption applies to Sanders, Hagelback, or the Kooimans. For instance, he cites *Litzendorf*, 2017 WL 5900830, at *3, for the proposition that a worker who "handles goods that have traveled interstate" is exempt. (Resp. at 3.) However, *Litzendorf* analyzed whether an employee is covered under the FLSA, not exempt under section 1 of the FAA. *See Litzendorf*, 2017 WL 5900830, at *3-4. While the FLSA is broadly interpreted to accommodate its remedial purposes, the FAA's exemptions on the other hand are narrowly interpreted, *see Concepcion*, 563 U.S. at 339. Thus, this case does not support Plaintiff's request. Plaintiff's other cases also do not help

- 7 -

him show this exemption applies. For example, he also cites *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015), which discussed whether a "business was an 'enterprise engaged in commerce'" under the FLSA, to support his request. This case is unpersuasive for the same reasons as *Litzendorf*.

As a result, the Court is left with Defendants' cases, which clearly illustrate Sanders, Hagelback, and the Kooimans were *not* "engaged in interstate commerce" under section 1 and are therefore bound to arbitration. (*See* Reply at 7.) In general terms, the cases stand for the proposition that "[d]elivery drivers may fall within the exemption for 'transportation workers' even if they make interstate deliveries only '*occasionally*," but they must nevertheless make deliveries across state lines. *Vargas*, 2016 WL 946112, at *4; *see also Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1152-54 (N.D. Cal. 2015) (finding section 1 inapplicable because "Plaintiff . . . has not shown that he or any other similarly situated delivery driver ever made trips across state lines[]"); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899 (N.D. Cal. 2018) (similarly finding section 1 inapplicable because "[plaintiff] does not allege that he ever crossed state lines as part of his work"). Defendants' cases do not help Plaintiff meet his burden. They instead more readily support the notion that section 1 is only "meant to exclude the contracts of workers who are literally engaged in the process of moving goods across state and national boundaries—workers like seamen and railroad employees." *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 397 (D. Ariz. 2017). Plaintiff does not even claim such a thing here.

Plaintiff's requests also conflict with the courts' liberal interpretation of the FAA. In other words, to apply section 1's exemptions to a worker who never crosses state lines without legal authority would upset the longstanding liberal interpretation of the FAA. *See Moses*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). As the Eleventh Circuit similarly reasoned: "To broaden the scope of § 1's arbitration exemption to encompass any employment disputes of a worker employed by a company

whose business dealings happen to cross state lines, would allow § 1's exception to swallow the general policy requiring the enforcement of arbitration agreements as pronounced in § 2 of the FAA." *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005). Absent any cases supporting Plaintiff's request to expand the FAA's longstanding preference for arbitration, the Court finds section 1's exemptions inapplicable under these circumstances.[5]

> ### 2. Defendants' Assertion of the Motor Carrier Exemption as a Possible Defense Does Not Establish the Transportation Workers Exemption for Plaintiff.

Plaintiff also claims Sanders, Hagelback, and the Kooimans are exempt from arbitration because three Defendants asserted the FLSA's Motor Carrier Exemption as a possible defense, which only applies to drivers directly *affecting* interstate commerce.[6] (Resp. at 5-6.) More specifically, he claims Defendants' assertion of this defense is "impossible to square with the notion that [the individuals] are not transportation workers engaged in interstate commerce." (*Id.* at 5.) The Court disagrees with this argument. As Defendants point out, "affecting commerce" under the FLSA is read differently than "engaged in commerce" in section 1. *See Circuit City*, 532 U.S. at 118 ("The plain meaning of the words "engaged in commerce" is narrower than the more open-ended formulations "affecting commerce" and "involving commerce.""). Even further, Defendants' assertion of the defense does not mean it necessarily applies. It also does not mean Defendants' belief that it should apply conclusively evidences Sanders, Hagelback, and the Kooimans were "engaged in interstate commerce," as Plaintiff suggests, (Resp. at 6). It should go without

---

[5] To be sure, "while there is some authority holding that a plaintiff need not personally deliver goods across state lines to qualify as a 'transportation worker' under § 1 and *Circuit City*, even those cases concern [individuals] with a much closer connection to interstate commerce than . . . here." *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *8 (N.D. Cal. Oct. 15, 2018), *motion to certify appeal granted*, No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr. 25, 2019). As the *Lee* court concluded, this Court also concludes it is "aware of no authority holding that couriers who deliver goods from local merchants to local customers are 'engaged in ... interstate commerce' within the meaning of § 1 of the FAA merely because some such deliveries might include goods that were manufactured out of state." *Cf. Lee*, 2018 WL 4961802, at *8.

[6] These Defendants specifically claimed "Plaintiff's claims are barred, in whole or in part, to the extent the work performed by Plaintiff falls within the exemptions provided for in Sections 13(a) and/or (b) of the FLSA, 29 U.S.C. §§ 213(a) and/or (b), as further defined in 29 C.F.R. Part 541." (Doc. 17 at 16.)

saying that an unproven defense is not conclusive proof for Plaintiff's claimed exemptions. Accordingly, this argument is unpersuasive.

### 3. Denying Defendants' Motions Based on Unspecified, Additional Discovery is Unwarranted.

Plaintiff also argues the Motions should be denied because their resolution depends on further discovery and that a better time for "determining whether the arbitration agreement controls the forum for dispute resolution is at the decertification stage – step two of the FLSA certification process." (Resp. at 8.) If the Motions are denied, he claims he could then use "discovery to defend against Defendants' anticipated motion[s] [to strike notices and compel arbitration]." (*Id.*) In reply, Defendants emphasize how Plaintiff must establish section 1's applicability and how he has not alleged or submitted any evidence showing Sanders, Hagelback, or the Kooimans ever worked outside Arizona. (Reply at 10.) In addition, Defendants submit an affidavit stating Sanders only worked for Defendants in Arizona. (*See* Doc. 36-1 at 2-3.)

Denying Defendants' Motions pending additional "discovery" is inappropriate. *See Data Disk, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (noting how "[i]n granting discovery, the trial court is vested with broad discretion"). Plaintiff provides no argument as to what this additional discovery will show or how it would alter the Court's outcome when the Motions are inevitably filed again. As the party responsible for establishing section 1's exemption, Plaintiff cannot simply claim additional unearthed discovery will probably show it applies. Thus, Plaintiff's request to avoid arbitration based on speculative discovery is not persuasive. *See Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (reasoning how "speculation" that additional discovery *might* impact the court's jurisdiction does not demonstrate the "'clearest showing' of actual and substantial prejudice" necessary for the court to allow more discovery).

Accordingly, Plaintiff has failed to show section 1 exempts Sanders, Hagelback, or the Kooimans from arbitration. This failure, coupled with the fact that the unchallenged Agreements clearly cover the FLSA claims at issue here, demands these parties be

compelled to arbitrate their FLSA claims.[7] *See Chiron*, 207 F.3d at 1130-31. Because these individuals must arbitrate their claims, the Court finds dismissing them, rather than staying the case, more appropriate. 9 U.S.C. § 3. Although Plaintiff's response is silent on the issue, Defendants' Motion requests dismissal because each individual's claim is encompassed by their Agreements. (Sanders Mot. at 10.) The Court agrees with Defendants. Thus, without objection by Plaintiff, the Court will dismiss each individual's FLSA claims. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

## B.  Motion to Strike

Having found arbitration appropriate, the Court will strike the Notices. *See* Fed. R. Civ. P. 12(f); LRCiv 7.2(m)(1). While Plaintiff mainly argues the transportation worker exemption applies, he does not otherwise seriously dispute whether the Notices should be stricken. (*See* Resp. at 6, 8.) His only argument for not striking them is that "'[m]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle" in which to consider the issue." (Doc. 55 at 2; Doc. 61 at 2 (citing *Thorpe v. Abbott Laboratories, Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008)). Because the Court is not striking the Complaint's class allegations, this case is inapplicable. Accordingly, the Notices will be stricken as immaterial because these individuals will be compelled to arbitrate their claims and dismissed from the case. Fed. R. Civ. P. 12(f).

## CONCLUSION

Plaintiff has failed to establish Sanders, Hagelback, or the Kooimans are exempt from arbitration as transportation workers under section 1. The undisputed arbitration agreements that encompass their FLSA claims will be adhered to.

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motions to Strike Samantha Sanders, Randy Hagelback, and Chris and Donald Kooiman's Consent to Join Collective Action and

---

[7] Because arbitration is appropriate under the FAA, the Court need not address Defendants' alternative arguments for arbitration under the Arizona Uniform Arbitration Act.

to Compel Arbitration, (Docs. 29, 53, 60).

**IT IS FURTHER ORDERED STRIKING** Docs. 26, 46, and 59 and **COMPELLING** Samantha Sanders, Randy Hagelback, and Chris and Donald Kooiman to arbitrate their FLSA claims according to their Agreements to Arbitrate. These individuals are dismissed from this suit.

Dated this 24th day of March, 2020.

Honorable Susan M. Brnovich
United States District Judge